IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MARGIE DESHON COWAN, | ) | C/A No. 2:15-CV-04181-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

   This case is before the court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B). The Plaintiff, Margie Deshon Cowan, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons stated herein, the undersigned recommends that the Commissioner's findings be affirmed.

## **ADMINISTRATIVE PROCEEDINGS**

   The Plaintiff applied for DIB on August 23, 2012, and was 35 years old on her alleged disability onset date of July 10, 2012. (R. 251-252.) The Plaintiff claimed disability due to arthritis in both knees and a torn meniscus in both knees. (R. 170.) The Plaintiff's application for DIB was denied initially and on reconsideration. (R. 181-189; 209-210.) The Plaintiff requested a hearing, which was held on July 11, 2014, before an Administrative Law Judge ("ALJ"). The

1

ALJ issued his decision on August 29, 2014, and it is now the Commissioner's final decision for purposes of judicial review. (R. 95-110.) The Plaintiff filed an appeal to the Appeals Council which was denied review. (R. 1-4.) In making the determination that the Plaintiff was not entitled to benefits, the Commissioner adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2)     The claimant has not engaged in substantial gainful activity since July 10, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)     The claimant has the following severe impairments: bilateral knee osteoarthritis; and obesity (20 CFR 404.1520(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift/carry ten pounds occasionally, push/pull up to ten pounds, sit for a total of six hours, and stand and/or walk a total of two hours. However, the claimant is limited to the use of foot controls on an occasional basis within the exertional level. The claimant requires a hand-held assistive device (such as a cane) to ambulate over narrow, slippery, or erratically moving surfaces, or for ascending or descending slopes. The claimant's collateral arm can be used to lift and carry up to the exertional limit except when using stairs. A hand-held assistive device would not be necessary for standing. The claimant can sit for one time up to two hours, can stand or walk at one time for up to 15 minutes before needing to resume a seated position, and must be able to prop feet on no higher than footstool level while sitting for up to 30 minutes, two times a day. The claimant can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, balance, kneel, crouch, and crawl, and can frequently perform stooping. The claimant can have less-than-occasional, if any, exposure to hazard associated with unprotected dangerous machinery or unprotected heights. Finally, the claimant is able to understand, remember, and carry out simple, routine, repetitive tasks in a low stress, predictable work environment that is free of fast-paced or team-dependent

> production requirements, with clearly defined performance expectations.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on August 30, 1976 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from December 24, 2012, through the date of this decision (20 CFR 404.1520(g)).

(R. 98-106.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.

3

An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence

and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted). Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff asserts the ALJ erred in the following two ways:

1. The ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Ms. Cowan's residual functional capacity.
2. The ALJ failed to properly evaluate Ms. Cowan's credibility.

(Dkt. No. 7.)

### Weight of Medical Opinion Evidence

The Plaintiff argues that the ALJ's residual functional capacity ("RFC") analysis conflicted with the limitations described by the Plaintiff's treating physician, Dr. Jacobus, and

5

that the ALJ did not provide explanations for the conflicts. (Dkt. No. 7 at 12-16.) Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; *see also* 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight.

Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5). "A treating physician is entitled to great weight because it reflects a judgment based on continuing observation over a number of years." *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986). An ALJ must provide specific and legitimate reasons supported by the record for the weight given to a treating physician's opinion. *See Bishop v. Commissioner of Social Sec.,* 583 Fed.Appx. 65, 67 (4th Cir.2014) ("given the specific and legitimate reasons provided, the ALJ was permitted to reject the treating physician's opinion in its entirety"); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th

6

Cir.2001) (finding no error in ALJ's decision not to give a treating physician's opinion controlling weight where specific and legitimate grounds were given); *Doyal v. Barnhart,* 331 F.3d 758, 764 (10th Cir. 2003) (holding the ALJ was required to provide specific, legitimate reasons for rejecting treating physician's opinion).

Considering the factors under 20 C.F.R. § 404.1527(c)(1)-(5), Dr. Jacobus' opinions must be examined closely.  Dr. Jacobus has been the primary treating physician for the Plaintiff for several years.  Dr. Jacobus is a specialist who regularly examined the Plaintiff.

In determining Ms. Cowan's RFC, the ALJ stated that he gave "limited weight" to the opinion from treating orthopedic surgeon Dr. Jacobus that Ms. Cowan is disabled. The ALJ explained that the context of Dr. Jacobus' opinion was in contemplation of the Plaintiff returning to her past work. (R. 103.)    The ALJ gave "greater weight" and adopted the limitations set forth by Dr. Jacobus in a letter dated June 18, 2013, that described specific limitations for Plaintiff. (R. 103-104.) The ALJ also stated that he gave "partial weight" to the findings in a questionnaire completed by Dr. Jacobus on July 29, 2013, but found it less reliable than the letter because it was completed in a check-box form that was supplied by the Plaintiff's attorney rather than detailed in narrative format. (R. 104.)

The Plaintiff argues that the RFC given by the ALJ is inconsistent with Dr. Jacobus' letter.  The RFC states that the Plaintiff "can sit for one time up to 2 hours and can stand or walk at one time for up to fifteen minutes" before needing to sit again. (R. 102.)  Dr. Jacobus' letter stated that the Plaintiff would need to be able to stand up and down without sitting more than two hours consecutively and would need to "be able to get up and change position for 20 to 30 minutes."(R. 430.)  In Dr. Jacobus' questionnaire, he gave a differing opinion.  Dr. Jacobus indicated it would be necessary or medically recommended for the Plaintiff to not sit

7

continuously. (R. 435.)  The form then asked, "How frequently must your patient get up and move around?" (*Id.*)  Dr. Jacobus responded approximately two hours. (*Id.*)  The form then asked "How long before your patient can sit again?" Dr. Jacobus' responded "15 min." (*Id.*)

The ALJ's RFC analysis has the exact same limitation that Dr. Jacobus gave in his questionnaire.  The Plaintiff's argument is without merit.  It is not for the ALJ to determine why the Plaintiff's treating physician would give different opinions approximately one month apart.  The ALJ reasonably followed the fifteen minute limitation which was given later in time.

The Plaintiff argues that the ALJ failed to give sufficient reason for discounting additional limitations that Dr. Jacobus' gave in his questionnaire that were not contained in his letter.  (Dkt. No. 7 at 14-15.)  The Plaintiff argues that the ALJ did not adopt Dr. Jacobus' opinion that the Plaintiff would need to elevate her legs twice a day for thirty minutes.  The Plaintiff's argument ignores that the RFC does accommodate this limitation.  The ALJ found that the Plaintiff "must be able to prop feet on no higher than footstool level while sitting for up to 30 minutes, two times a day."[1] (R. 102.)   The Plaintiff additionally argues that the ALJ failed to adopt Dr. Jacobus' opinion that the Plaintiff would be absent from work two to three times a month due to her impairments.  (Dkt. No. 7 at 15.)  The ALJ specifically addressed this opinion and found it to be speculative. (R. 104.)  *See Davis v. Colvin*, No. 6:14-cv-42, 2016 WL 1065836, at *6 (W.D. Va. Mar. 16, 2016) (holding that Plaintiff's contention of excessive tardiness or absence from work was speculative.); *Simpson v. Comm'r of S.S.A.*, No. 1:09-cv-02731-HFF-SVH, 2011 WL 1261499, at *2 (D.S.C. Mar. 31, 2011) (holding that the contention that the Plaintiff would have to be absent from work for medical appointments was speculative).

---

[1] The Vocational Expert testified that the level the legs could be propped was thirty degrees. (R. 161.)

8

The weights given by the ALJ to Dr. Jacobus' opinions and his RFC analysis are supported by substantial evidence.

**ALJ's Credibility Determination**

The Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. (Dkt. No. 7 at16-20.) The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible and would not preclude" the RFC found by the ALJ. (R. 104.)

"The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595. Factors relevant to assessing a claimant's symptoms apart from objective medical evidence include "daily activities," "[t]he location, duration, frequency, and intensity of…symptoms," and "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your…symptoms."  20 C.F.R. § 404.1529(c)(3). The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

The Plaintiff argues that evidence that injections alleviate the Plaintiff's pain temporarily was not contrary to a finding of disability. (R. 18-19.) The Plaintiff contends that her ongoing

9

knee pain precludes her from performing work on a regular and continuing basis. (*Id.*)  The Fourth Circuit has held that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).  The ALJ noted that the Plaintiff "reports great improvements in pain every time she receives injection and then does not return for treatment until her pain returns." (R 104.)  The ALJ's statement is supported by the record.  Dr. Jacobus described the Plaintiff's treatment as "somewhat conservative" with injection therapy. (R-429-30.)  Dr. Jacobus described the Plaintiff's condition after injections as "much improved" and providing "significant relief." (R. 440-441.)  The ALJ's consideration of the Plaintiff's improvement was proper. *See Bragg v. Astrue*, No. 2:09-cv-65, 2010 WL 3463994, at *8 (N.D.W. Va. Sept. 3, 2010) (holding that the ALJ made a proper credibility determination when he considered the frequency of pain injections among other factors).

The ALJ also properly considered the Plaintiff's daily activities.  The Plaintiff essentially asks this court to re-weigh the Plaintiff's credibility, which is improper. *Evans v. Colvin*, No. 8:13-CV-01325-DCN, 2014 WL 4955173, at *5 (D.S.C. Sept. 29, 2014).  A plaintiff's daily activities may very well undermine her claims of pain and may be considered by the ALJ. *See Bostic v. Astrue*, 474 F. App'x 952, 954 (4th Cir. 2012); *Yost v. Barnhart*, 79 F. App'x 553, 556 (4th Cir. 2003); *Kearse v. Massanari*, 73 F. App'x 601, 603 (4th Cir. 2003).  The ALJ's consideration of the Plaintiff's daily activities was not improper.

The Plaintiff argues that the ALJ mischaracterized her testimony that she could work in a job that allowed her to be seated. (R. 19-20.)  This argument is without merit. The ALJ stated "the claimant testified that she could work if given a seated position job.[sic]" (R. 104.)  The testimony was given as follows:

10

> ALJ: Okay there were some issues of you—them not being able to accommodate a more sit down position for you. Is that—is that the issue? At least that's what I see in the file.
>
> Plaintiff: That, sir, and my constant movement, which was 7.5 hours of my shift.
>
> ALJ: When you say constant movement you mean you were having to walk around or—
>
> Plaintiff: Yes, sir.
>
> ALJ: --stand and things. So they couldn't accommodate a more sedentary position for you?
>
> Plaintiff: Right.

(R. 119.) The Plaintiff's attorney argues that this testimony states that the Plaintiff "has to get up and move around constantly throughout the day." (Dkt. No. 7 at 19.) This argument does not accurately reflect the testimony or the opinions given by Dr. Jacobus. The testimony states that the Plaintiff's former position required her to be in constant movement. She could not perform the work because they could not accommodate her with "a more sedentary position." This court finds that the ALJ properly followed the two-step process for determining the Plaintiff's credibility and that the ALJ's findings are supported by substantial evidence.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be **AFFIRMED**,

IT IS SO RECOMMENDED.

January 17, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

11